UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:   JAMES E. MAGER, | : | Chapter 13 |
| | : | |
| Debtor | : | Bky. No. 19-14008 ELF |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

James E. Mager ("the Debtor") commenced this chapter 13 bankruptcy case on June 24, 2019. On October 25, 2019 Fresh Look Flooring LLC, d/b/a Olden Carpet and Flooring ("Fresh Floor") filed a motion for relief from the automatic stay, seeking leave to resume state court litigation against the Debtor("the Motion") (Doc. # 29). The Debtor filed a response to the Motion on November 13, 2019 (Doc. # 37). A hearing on the Motion was held and concluded on November 19, 2019, after which this matter was taken under advisement.

The Debtor previously owned a membership interest in and worked for Fresh Floor, but their business relationship soured and Fresh Floor terminated Debtor's employment. Each now asserts the other committed various business torts in the course of their dealings.

The Motion involves the relatively rare situation in which an unsecured creditor holding a disputed claim in a chapter 13 bankruptcy case seeks leave to resolve the dispute and liquidate its claim in another forum – in this case state court (the Court of Common Pleas, Bucks County) – rather than through the bankruptcy claims allowance process.

As explained below, after engaging in a holistic analysis of this chapter 13 case, I have concluded that cause exists to grant Fresh Look relief from the automatic stay.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A.**

It is helpful to begin by examining the parties' past relationship and the status of their prepetition state court litigation.

Beginning in 2008, the Debtor purchased a 45% membership interest in Fresh Look. Fresh Look operates a business that sells and services floor installations and paint, trading under the name "Olden Carpet and Flooring."

The Debtor also worked as a Fresh Look employee. Fresh Look terminated his employment in 2017. His termination initially triggered two (2) pieces of litigation in the Court of Common Pleas, Bucks County:

> (1) a writ of summons filed by the Debtor against Fresh Look and several related parties, <u>James E. Mager v. Fresh Look Flooring LLC, Michael J. Young, Jr., Michelle C. Young, 3MG Properties, LLC, Moore Ave, LLC</u>, No: 2017-05627 (C.P. Bucks Cty.) ("the Debtor's 2017 Action"); and

> (2) a replevin action filed by Fresh Look against the Debtor, <u>Fresh Look Flooring LLC d/b/a Olden Carpet and Flooring v. James Mager</u>, No: 2018-01860 (C.P. Bucks Cty.) ("the Replevin Action").

The parties resolved the Replevin Action in June 2018, following a conference with a state court judge. The same judge engaged the parties in a series of settlement conferences in an effort to reach a global settlement of all their disputes. The parties exchanged some discovery during the settlement negotiations. Despite the state court's efforts, the parties did not reach a global settlement.

As a result, in 2019, Fresh Look and its principal commenced another lawsuit in state court against the Debtor. In the Fresh Look Action Complaint, Fresh Look asserted, <u>inter alia</u>,

that the Debtor used company credit cards for personal use while still an employee and that, after his separation, misappropriated accounts receivables and Fresh Look business opportunities. Fresh Look and its principal asserted claims for damages for breach of fiduciary duty, breach of contract; they also asserted a claim for equitable removal of the Debtor as a member of Fresh Look.  See Fresh Look Flooring LLC d/b/a Olden Carpet and Flooring and Michael Young v. James Mager a/k/a James E. Mager, Docket No: 2019-03449 (C.P. Bucks Cty.) ("the Fresh Look Action").

As far as the Debtor's 2017 Action is concerned, i.e., the Debtor's affirmative action, it appears that the case has not proceeded beyond the filing and service of the writ of summons.[1]

**B.**

The Debtor filed his bankruptcy petition on June 24, 2019. The petition was accompanied by his bankruptcy schedules.

The Debtor's schedules and the proofs of claim filed in this case reveal the following relevant aspects regarding the Debtor's financial condition:

- the Debtor owns his residence at 125 Colonial Drive, Langhorne, PA ("the Residence"), which he values at $420,000.00;

- the Residence is subject to the following liens:

    - a first mortgage held by Wells Fargo Bank with an unpaid balance of $172,219.64;

---

[1] Under Pennsylvania Rules of Civil Procedure, a plaintiff can commence a civil action by filing either a complaint or a praecipe for a writ of summons.  Pa. R. Civ. P. 1007.  The defendant may then file a praecipe requiring the Prothonotary to enter a rule requiring the filing of the complaint; if the complaint is not filed within twenty (20) days after service of the rule, upon praecipe of the defendant, the Prothonotary is obliged to enter a judgment of *non pros*.  See Pa. R. Civ. P. 1037(a).  Fresh Look has taken no action under Rule 1037(a) in the Debtor's 2017 Action.

- a second mortgage also held by Wells Fargo Bank with an unpaid balance of $79,664.21;

• unsecured claims totaling $698,283.40 have been filed as follows:

- Santander Bank, in the amount of $210,598.92, based the Debtor's guaranty of a Fresh Look loan;[2]

- Fresh Look, in the amount of $486,602.73, based on the business torts that Fresh Look alleges the Debtor committed;

- Wells Fargo Bank, in the amount of $1,081.75, based on a consumer credit obligation;

• the Debtor claimed an exemption on $25,150.00 in his residence. See 11 U.S.C. §522(d)(1).

Moreover, and significantly, the equity in the Debtor's Residence (approximately $140,000, based on schedules A/B, C, and D) far exceeds the Debtor's allowable exemption in residential property ($25,150.00). Thus, in order to be confirmed, the Debtor's plan will have to provide for a substantial payment on account of allowed unsecured claims. Compare 11 U.S.C. §§522(d)(1), (5), with 11 U.S.C. §1325(a)(4).

The proposed plan filed by the Debtor on July 22, 2019 ("the Plan") (Doc. # 15) provides for payments to the chapter 13 trustee ("the Trustee") totaling $102,000.00, as follows:

- $50.00/month for 35 months;

- a final payment of $92,258.00.[3]

And yet, the Debtor disclosed monthly, after-tax income of $3,432.41 (which includes a "family

---

[2] Santander Bank's claim has been reduced to judgment through the entry of a confession of judgment.

[3] The scheduled plan payments are not consistent with the plan's stated base amount.

contribution" of $600/month) and monthly expenses of $6,489.12,[4] (which includes a monthly mortgage payment of $2,600.00).[5] See Sch. I and J (Doc. # 1). The Debtor is clearly earning far less than he needs in order to pay his expenses, much less a regular chapter 13 plan payment.

The Debtor's counsel acknowledged at the hearing on the Motion that the Plan was dependent on the successful outcome of the Debtor's litigation against Fresh Look. (See also Plan, Part 9). Specifically, the Debtor expects to prevail on his claim that Fresh Look and its principal committed various business torts that damaged the Debtor (and not *vice versa* as asserted by Fresh Look). The Debtor asserts that the monetary damages to which he is entitled will include an amount sufficient to satisfy the outstanding Santander Bank obligation of $210,598.92 and will fund his Plan.

### III. LEGAL STANDARD

Fresh Look seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d), which provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, **the court shall grant relief from the stay provided under subsection (a)** of this section, such as by terminating, annulling, modifying, or conditioning such stay—

---

[4] The Debtor has not explained how he can even make the modest $50.00/month payment to the Trustee in light of the degree to which his monthly expenses exceed his monthly income. On September 12, 2019, the Trustee filed a motion to dismiss the case based, in part, on the failure to make plan payments. The Trustee has not pressed that motion, but instead has agreed to a number of continuances. The next hearing on the motion is scheduled on March 10, 2020.

[5] In its proof of claim for its first mortgage, Wells Fargo asserted that there are prepetition arrears of $1,596.46. Wells Fargo does not claim that there are any arrears on its second mortgage. (See Claim Nos. 1, 4).

> (1) **for cause**, including the lack of adequate protection of an interest in property of such party in interest . . . .

(emphasis added).

The term "cause," which is not defined in the Bankruptcy Code, "is an intentionally broad and flexible concept which must be determined on a case-by-case basis." In re Schaffer, 597 B.R. 777, 789 (Bankr. E.D. Pa.), *aff'd*, 606 B.R. 228 (E.D. Pa. 2019); see also In re Merchant, 256 B.R. 572, 576 (Bankr. W.D. Pa. 2000)).

I previously articulated the principles governing the determination whether "cause" exists to grant relief from the automatic stay to an unsecured creditor as follows:

> A distinct body of law has developed in applying the standard of "cause" under § 362(d)(1) when relief from the automatic stay is requested by an unsecured creditor . . . .
>
> Courts often state that an unsecured creditor is entitled to relief from an automatic stay only in "extraordinary circumstances." E.g., In re Brown, 311 B.R. 409, 413 (E.D. Pa. 2004) (citing cases). Generally speaking, this is an accurate statement because, usually, granting stay relief to an unsecured creditor would contravene the purposes of the stay. This is so because:
>
> 1. one of the purposes of the automatic stay is to give the debtor a respite from the time and expense of responding to the collection efforts and litigation initiated by creditors;
>
> 2. if the claim will be discharged in a no-asset case, no purpose would be served by further litigation to determine the existence of and the amount of the liability; and
>
> 3. in a case involving the distribution of assets in the bankruptcy case, most disputes relating to the validity and amount of an unsecured creditor's claim can be resolved through the proof of claim process.

In re Irwin, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011) (citing In re Chan, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006)); see also  In re Quad Systems Corp., 2001 WL 1843379, *5–6 (E.D. Pa.

Mar. 20, 2001).

At the same time, however, the phrase "extraordinary circumstances" may overstate the stay relief movant's burden:

> Rather than referring to "extraordinary circumstances" as the test for granting stay relief to unsecured creditors, it may be somewhat more accurate to describe the court's inquiry as one in which **the court balances the competing interests** of the parties—balancing the harms to determine whether the hardship to the [movant] caused by the continuance of the stay outweighs the hardship to the debtor caused by stay modification. Stated slightly differently, the court must **compare the equities of freeing the creditor from the restraint of the automatic stay so that it may pursue its claim promptly in another forum against the impact that such relief is likely to have on the bankruptcy process**. This requires the court to consider the **totality of the circumstances**.

Irwin, 457 B.R. at 426 (emphasis added) (citations and quotations omitted).

The bankruptcy court possesses broad discretion in determining whether cause exists, based on consideration of the various competing interests. Id.

## IV.  DISCUSSION

### A.

Fresh Look contends that cause exists to grant it relief from the automatic stay to proceed with the 2019 Fresh Look Action because "the disputes between Movant and Debtor would be resolved more economically and conveniently in a non-bankruptcy forum." (Motion ¶ 25). According to Fresh Look, the parties agreed to consolidate the litigation into a single track to be heard before the state court judge who had conducted a number of conferences with the parties and who "has an in-depth knowledge of the relationship and issues." (Motion ¶ 15). Indeed, Fresh Look's request for relief from the automatic stay is based largely on the state court's familiarity with the parties' dispute.

In response, the Debtor argues that the state court litigation is easily adjudicated as part of the claims allowance process. The Debtor submits that the bankruptcy court should follow the conventional approach of resolving disputed claims in the bankruptcy court, particularly because the adjudication of the parties' completing claims is essential to determining the confirmability of the Plan.

**B.**

**1.**

As stated in Part III, supra, the essence of the determination whether to grant relief from the automatic stay to an unsecured creditor involves balancing the impact of permitting the creditor to pursue its claim in another forum against the impact that such relief is likely to have on the bankruptcy process. Here, after considering the competing concerns, I conclude that the balance tips in favor of Fresh Look for several reasons.

First, the Debtor's Plan and rehabilitation strategy are problematic. Confirmation and completion of the Plan are dependent on a substantially successful outcome in the Fresh Look litigation, which is hotly contested, subject to counterclaims and thus, likely to be drawn out and expensive. Many courts have questioned whether a chapter 13 plan dependent on uncertain litigation can satisfy the feasibility requirement of 11 U.S.C. §1325(a)(6).[6] Even if there is no *per se* prohibition against confirmation of a chapter 13 plan dependent on the receipt of payments from unliquidated claims asserted in pending lawsuits, plans that propose to make payments with

---

[6] See, e.g., In re Foster, 2019 WL 7841547, at *8 (Bankr. M.D.N.C. Feb. 8, 2019); In re Jensen, 425 B.R. 105, 110 (Bankr. S.D.N.Y. 2010); In re Ewald, 298 B.R. 76, 82 (Bankr. E.D. Va. 2002); In re Thornhill, 268 B.R. 570, 574 (Bankr. E.D. Cal. 2001).

the receipt of funds from uncertain sources are scrutinized very carefully. In re Moffet, 455 B.R. 718, 723 (Bankr. N.D. Iowa 2011) (citing In re McCormick, 354 B.R. 246, 256 (Bankr. C.D. Ill. 2006).

Given this heightened standard for confirmation of the Plan and the Plan's explicit dependence on a successful prosecution of the Debtor's disputed claims against Fresh Look, one would have expected the Debtor to take steps as quickly as possible to pursue his claims against Fresh Look in the forum of his choice, presumably the bankruptcy court. Instead, that more than seven (7) months into this bankruptcy case, the Debtor has not initiated any action in the bankruptcy court to press his affirmative claims against Fresh Look or object to Fresh Look's proof of claim. Nor has he taken any action to prosecute the 2017 Action he commenced in state court, which has seen not progressed beyond service of the writ of summons.[7] The Debtor's passivity is both striking and hard to justify, given that the prospective, substantial affirmative recovery against Fresh Look is the foundation of his proposed chapter 13 plan of rehabilitation.

Further, when questioned at the hearing on the Motion, the Debtor's bankruptcy counsel acknowledged that prosecution of the Debtor's claims against Fresh Look (and the Debtor's defense against Fresh Look's claims) likely would require a substantial expenditure of resources. The Debtor's bankruptcy counsel did not volunteer to undertake that litigation and could not articulate how the Debtor will be able to obtain or fund special counsel to do so.

This ongoing delay and the uncertainty in how the Debtor will obtain the resources to pursue the (allegedly beneficial) litigation against Fresh Look, combined with the imbalance in the Debtor's disclosed personal economy (his monthly expenses far exceeding his monthly

---

[7]     As an affirmative claim of the debtor, the Debtor's 2017 Action was not stayed by 11 U.S.C. §362(a).

income) lead me to question the Debtor's good faith in this bankruptcy case. <u>See generally</u> 11 U.S.C. §1325(a)(3) (chapter 13 plans must be proposed in good faith). The more closely this case is examined, the more it appears to be a holding action, rather than a *bona fide* effort to implement a personal financial rehabilitation.[8]

**2.**

My concern about the Debtor's good faith and the viability of this bankruptcy case, while significantly contributing to my decision, is not, by itself, determinative. Fresh Look and the Debtor are locked in a bitter "business divorce" that will have to be adjudicated. But the present issue here is simply a choice of forum for resolution of their disputes. A significant consideration in balancing the competing interests is whether relegating the dispute to state court will unduly interfere with the bankruptcy process.

Here, given the time that has passed since the commencement of this bankruptcy case, my perception is that the most efficient way to "move the litigation" is to allow the parties to proceed in state court, where actions have already been commenced in state court and where the Debtor will be able to assert his claims against Fresh Look – rather than continuing to await the initiation of new proceedings in this court.

This outcome is equitable because it will not unduly interfere with the Debtor's chapter 13 strategy and proposed plan.

---

[8] I acknowledge the possibility that the Debtor has been acting in "subjective good faith," in the sense that he sincerely believes in the merits of his claims against Fresh Look and the feasibility of his chapter 13 plan. But that is not enough. The concept of good faith in bankruptcy has an objective element that requires that the debtor possess a realistic ability to implement his rehabilitation strategy, whether though payments or successful litigation. <u>See, e.g.</u>, <u>In re Ferguson</u>, 376 B.R. 109, 123-24 (Bankr. E.D. Pa. 2007).

Whether the litigation is conducted in state court or the bankruptcy court, the Debtor cannot expect confirmation of his plan to await its outcome, which could take years. Thus, a confirmation hearing will be held before the conclusion of the litigation between the Debtor and Fresh Look.

At the confirmation hearing, the Debtor will have the burden of establishing the plan's feasibility. See, e.g., In re Bradley, 2008 WL 4065810, at *4 (Bankr. E.D. Pa. Aug. 26, 2008) (citing cases). This burden necessarily requires the Debtor to make a showing that he is more likely than not to prevail in the pending litigation. In this respect, the confirmation hearing will be similar to a preliminary injunction hearing. In such a proceeding, the court does not conduct a full adjudication of the merits of the claims and defenses; rather, the court determines whether there is a reasonable probability that the moving party will prevail on the underlying disputed claim. See In re NW. 15th St. Assocs., 435 B.R. 288, 304-05 (Bankr. E.D. Pa. 2010) (citing In re Nuclear Imaging Sys., Inc., 260 B.R. 724, 731 (Bankr. E.D. Pa. 2000)). Similarly, here, the confirmation hearing would not fully adjudicate the merits of the Debtor's claims against Fresh Look, but would determine whether there is a reasonable probability that the Debtor will prevail in his claims against Fresh Look. In other words, the Defendant would bear the burden to show – in a kind of mini-trial of his dispute with Fresh Look – that his claims are reasonably viable.

Ultimately, the Debtor must satisfy a heavy burden in establishing the feasibility of his plan, when it is dependent the successful litigation of his claims against Fresh Look. If he cannot meet this burden, confirmation of his plan should be denied as infeasible. See 11 U.S.C. §1325(a)(6).

The important point for present purposes is that, regardless whether the litigation between

the Debtor and Fresh Look takes place in the bankruptcy court or state court, the Debtor will have the same obligation and opportunity to prove feasibility at the confirmation hearing and therefore, he is not unduly prejudiced by the grant of the relief requested by Fresh Look.  If anything, the Debtor's ability to obtain timely discovery may be enhanced by proceeding in the pending state court actions, as opposed to bankruptcy proceedings that have not yet even been commenced.

## V.  CONCLUSION

For the reasons set forth above, the Motion will be granted.  An order consistent with this Memorandum will be entered.

**Date:  February 12, 2020**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**